Next case, United States v. Jackson. Good morning. May it please the Court, I'm Gwen Schoenfeld on behalf of Vincent Jackson. Vincent Jackson was subjected to an unconstitutional, warrantless, suspicionless search of his home. And the evidence that was seized should have been suppressed. Now, in this case, the exceptions to the warrant and the probable cause requirements of the Fourth Amendment may include where there is a law or condition that authorizes a relaxation of those constitutional requirements, and that law or condition has to satisfy special needs or, under the totality of the circumstances, must be reasonable. And why does your client's requirement to sign off on, with the probation department, that he will be subject to essentially stop and frisk virtually at any time that the probation officer has some concern, and your client has signed off on that, not answer the question here? What's unreasonable about that? Well, the search condition here had a reasonable suspicion requirement. It did not allow warrantless, suspicionless searches. Warrantless, yes. Suspicionless, no. The clause here specifically said that he has to have a search with reasonable suspicion concerning a violation of the condition of probation or supervised release or unlawful conduct by you. Right.  He's found with a pile of money. He's not working, which the probation officer knows he isn't. He attributes it to a job that he has, but he has not told his probation officer. Isn't that in and of itself at least cause for reasonable suspicion? No. What more is needed? What more is needed, if you look at what you take for, first of all, assume that reasonable suspicion was required here, which I argued it was. To answer your question, what you have here are a series of supervised release violations and an unconnected incident. You're focusing on one and saying, isn't the unexplained cash sufficient? I have not found a single case that says unexplained cash establishes reasonable suspicion. So should we write on that? No. Don't we? I mean, we've got case law that says that we can look at all that's in the aggregate. And so apart from what Judge Hall is saying is we know that there are five unauthorized trips to New York City. The probation was aware that he had ridden in a vehicle with a woman who had been convicted of a drug trafficking offense, that she was subsequently arrested in that same vehicle. And as Judge Hall pointed out, was aware that Jackson, Mr. Jackson, had been stopped with a large sum of cash in small denominations, that he lied to the police about its origins, and that he failed to report the stop to probation as required by the terms of a supervised release. So if we look at everything in the aggregate, isn't that a problem for you? No. And this is why. You can look at everything in the aggregate, which you are required to do, but you also have to look at the individual things. You can't just pile up unrelated things, unrelated supervised release violations. None of these are crimes. Unrelated supervised release violations, you can't just pile them up and say, oh, well, they're unrelated, but he has all these violations. Therefore, he must have been doing something illegal. What's – isn't it reasonable for a probation officer, though, to draw a conclusion, at least with respect to the majority of them, that they are related? Well, if you both – Hanging out with a former drug trafficker and a pile of cash. I mean, to me, not prejudging this post – you know, pre-conclusion of argument, that almost cries out drugs. Okay. The hanging out with a prior convict. A prior drug felon. A prior drug felon. In a vehicle, I might add. In a vehicle. Where no – which was not searched, no drugs were found, and all the people were allowed to leave. $2,500 was found. $2,500. No drugs. It's a pretty heavy duty carrying around line. It is. I don't know. But let me address the hanging out with the – yeah, I wouldn't, but let me address the hanging out with a prior drug felon. In today's day and age, where we live in a country where we have the highest conviction rates in the world by far, it's pretty hard to say that – I know they're not supposed to hang out with a felon, but how are they supposed to know? Okay. First of all, there's no evidence he knew she was a prior felon. There was no evidence of drug activity. I know he had the cash, but that's a separate issue, because there was no evidence at that time of any drug activity whatsoever. Wait a second. The cash is the calling card of drug activity, and he offers up a lie as to why he has it, because he's got a construction job. He's unemployed. He said it was from a construction job. There was no – You can't separate out the individual facts of that stop and do each of those individual facts. You have to look at the sum total of the stop. He's in a car with a prior felon, a prior felon who has drug history, and in that car is $2,500, and he offers up a lie as to why the money's there. A week later, same car, same felon, drugs. Not cash this time, drugs. And you think it's unreasonable that they might make the connection that he knew or had some relationship to the two events. At subsequent stop, he was not in the car. I know. Only one of the women who was with him that night was in the car. The felon? Yes. And they found supposedly ledgers of accounts payable. I'm assuming it was drug ledgers. There was no mention of my client in there at all. There was no connection between the ledgers and my client. The government never, ever made that connection. So the fact that, yes, should he have been hanging out with a prior drug felon? No. But that alone doesn't prove that he had any connection to the later stop of the car where he wasn't there. He might have some relationship to her drug activity. His presence with her, well, she's got a large sum of money with no explanation for it other than his lie as to the explanation for it. And then a week later, she's caught again. She stopped again. She has drugs with her. That should in any way give them cause for concern that he might be engaged in illegal activity. No. There's various reasons he could have been in that car. It was him. It was two women. There was no testimony or evidentiary hearing in this case. Do you think it would be irrational to think that he might have some connection to it? Because it's a reasonable suspicion, right? Yes. A suspicion for which some reason can be attributed. Yes. But you need articulable facts. And I would say that this unrelated stop a week later, which had no connection to him, one of the people, two of the people in that car were not even there that night. Okay. And you've got to remember in the first stop, there were no drugs. Okay. Okay. There were no drugs at all. Yes, he was with a felon, but it's almost unavoidable these days, and there's no evidence he knew she was a felon. There could have been other reasons he was in the car with this woman. If there were drugs, we wouldn't even be having this conversation, right? Oh, no. No. If there were drugs, we would not. That is true. But drugs are not the cynic one owning all of this. No, but I think if you look at the – I know you're supposed to look at the aggregate, but you still have to look at the individual parts. Hanging out with a drug felon is not a crime. And in this case, in these circumstances, it is likely he's going to run into other felons. It's going to be the socioeconomic groups. Yeah. And there was nothing suspicious in that first stop. They let him go. They let all of them go. Thank you very much. Thank you. May it please the Court. Wayne Myers on behalf of the United States. I think the Court has homed in on a central issue here, which is that there was plainly reasonable suspicion to believe as of September 11th, 2013, that the defendant was involved in drug trafficking. Is it your position that any technical violation is grounds for probation to do a search? It would be, Your Honor. Correct. So any technical violation? Any technical violation. So let's say the defendant is one day late in submitting a monthly report to the probation office. Is that grounds for then searching the person's computer, going into his room? Provided that the decision to search the probationer's computer or apartment was rationally and reasonably related to the execution of the probation office's duties, I would submit the answer to that question is yes. I think it's worth noting that the probation office is not the typical executive enforcement branch. It's rather a branch of the court, and it has a unique posture in the system. Well, what is the rational nexus in this case? Well, for example, as my opponent noted, the probation office did not necessarily have evidence that the defendant knew the person that he was with in Plattsburgh on August 28th, 2013 was a felon. Searching his apartment could give some indication that the defendant did, in fact, know that person was a felon. It could also relate to, for example, one of the violations involved the defendant traveling to and from New York City. The search could be rationally related to identifying evidence that the defendant was, in fact, in New York City. So let's say that somebody is on supervised release and happens to be friends with somebody who is a felon. That in and of itself is enough to create some sort of suspicion, reasonable suspicion? If the probation officer's determination is based on the person associating with another felon, that there's a basis to think that the defendant might be posing a safety risk, violating the terms of release imposed by the court, then I would submit the answer to that question as yes. I think that it's worth noting, as this Court has recognized and the Supreme Court has recognized. So there are no limits, in your view? Well, I think there would be limits if it were. Can you think of a limit? If it were to be arbitrary and capricious. For example, if somebody were to, a probation officer were to enter the defendant's apartment and did not like Mets fans and made the decision to search as a result of that, that might be an example of something that would be arbitrary and capricious. But this Court is. I would say for personal offense. I'm a Mets fan myself. But if, and this Court has recognized in two cases that I think are worth noting. There's Giustianano and Massey where if a probation officer enters an apartment and smells that something's amiss based on some subjective determination. For example, in Massey the Court found that there was, in Massey the probation officer found what appeared to be a handle underneath a bed. And it was suspicious conduct, and so that opened up a search for a more, that opened up the avenue for a more exhaustive search of the defendant's apartment, which uncovered weapons. And the Court, this Court has approved that sort of conduct. So my argument would be that provided that the probation officer's decision to search is rationally and reasonably connected to the execution of the probation officer's duties, then the search would be permissible. So what's the government's view with respect to aggregation of instances that sort of. Oh, it's absolutely. As opposed to having to deal with each one individually and see whether that in and of itself rises. And maybe I misunderstand Ms. Schoenfeld's argument. No, I believe the law is quite clear that they need to be considered in the aggregate and here, both in terms of the conduct relating to drug activity, which is a separate reasonable suspicion unrelated to the three technical violations. But you throw all these things in a pot together, and as Your Honor noted, it cries out for a drug crime. What about if the, well, let's take the instance here where there's $2,500 in cash found, an explanation given that he is working. Was that by itself sufficient basis to know when it searched the apartment? When the probation office had no record of his working? The answer to that question is yes, given that the defendant was on supervised release for a drug felony, and one of the two people that he was with was also at the time on supervised release for a drug felony, having $2,500 in unexplained cash in small denominations, lying to the State Trooper about the origin of that cash, and then failing to notify the probation office of that contact with law enforcement all put together, I would submit smells of a drug crime, to a reasonably and cautious investigator, which is the standard here. It's not a reasonable suspicion. Well, I think the argument is a little different, though. I think the argument that they're making is that you knew that he was in the presence of a felon. You knew that he had lied about his employment. You knew that he had reported the contact or the stop by the police officer, and therefore, that knowledge alone was enough. You didn't need anything else. And I think his view is that, because his waiver says a reasonable suspicion of a violation of the terms of a supervised release, right? That's correct, Your Honor. And I think their reading of it is, is that once you knew that, you have no reason to do anything else. What's your response to that? I don't think that argument holds water at all for the reason I already the example that I provided in context of trying to prove up a supervised release violation. Essentially, what the defendant's arguing is that once there's some quantum of proof, what that quantum of proof is unknown, but the probation office has precluded from further investigating a known violation. Here, I don't think there's conclusive proof that the defendant had necessarily violated the terms of his conditions. For example, he might have argued that he was not in Plattsburgh on August 28th, that somebody stole his driver's license, and it was a case of mistaken identity. And so it would be perfectly appropriate for the probation office to enter his apartment and attempt to prove up that violation with further evidence. If the panel has no other questions, then I would rest my papers. Thank you. Thank you. Ms. Schonefeld. Thank you. I wanted to address the government's position that any technical violation would allow a search in this case, and that if the probation officer acted rationally and reasonably related to her duties, then the search would be okay. They're skipping one part. You need to justify that condition by special needs. And special needs doesn't just say you can say the magic word, the probation has special needs to supervise people and supervise release. There actually has to be some analysis explaining why the special needs of law enforcement go beyond what is normally required of law enforcement. The government did absolutely no analysis here. And while this Court had pointed out in Lipschitz that there was not a lot of guidance about what the standard is and how you determine whether the condition is reasonable, the Supreme Court did just that later on in Sampson. They looked at recidivism rates in California. They found out California had the highest recidivism rates. Not only were they high in California, but within the entire country, I think they had the highest recidivism rates. And that was one of the reasons that they decided that special needs authorized a suspicionless search in those cases. They also looked at case law, policies, and everything else. They've done none of that here. And in this case, the statistics actually show that in the federal system, the recidivism rates, according to the Bureau of Prisons, have gone down by 16 percent. It also shows recidivism rates in the federal system are far lower than that in the state. The reconviction rate in the federal system is about 32 percent. In the state system, it's about 55. And you're arguing this to us because what's the end result of all of this? The government was arguing if you find no reasonable suspicion, the search was still good. Okay. Because the condition allowed a suspicionless search. We have to go to no reasonable suspicion. We have to get to no reasonable suspicion before we. Correct. And I was just addressing his point. Sorry, Ms. Schoenfeld. No, that's okay. And the other point I wanted to address was Your Honor pointed out that our position is in connection with the supervised release violations. Yes, once you have definitive proof, you can't separate out the reasonable suspicion for the violation and the evidence for which you are seeking. And if there is definitive proof, and in this case, they knew he traveled to New York City because they had the records of his travels when he was on the monitoring. We knew, the government knew he was in the presence of a convicted felon because they had her records. They knew more than my defendant knew. And the officer arrested him in Plattsburgh knew that it was him. Yes, there might have been somebody who said, yes, they stole my ID. I wasn't there. But that wasn't this case. So if you don't have, if they have definitive proof for the supervised release violations, there is no reason to justify a search because what are they looking for? Really, they're just going in there, and this was the argument I think made in the lower court. They're going to see if there's anything else. They're not looking for evidence of that. So what's wrong with it?  You can't divorce the reasonable suspicion of the violation from the reasonable suspicion for what you're searching. Do you have a, it sounds to me as though you're arguing, and maybe you want to reframe this, but it sounds to me as though you're arguing once you probation officer have enough little pieces of evidence to say this person is committed to supervised release, you are obligated to scoop him or her, and you cannot do anything to further your investigation of whether that person may be engaged in not only the violation we know about, but other violations. It would need to have suspicion that he was engaged in other violations. The fact that he traveled to New York City did not give rise to other violations. They knew he had family there. The government knew. I'll tell you, being from Vermont, and we're all from upstate, so we're just across the lake from you, back when I was prosecuting, if people traveled to New York City, that's a number one hit for drug trafficking in the minds of, in my view, reasonable law enforcement officers. Okay. In this case, the facts which the government did not dispute, he had family in New  He could have obtained permission to travel to New York City and could have obtained permission to do that. Your view creates a curious result. If they're reasonably convinced that a person is committed an offense, they're not allowed to look for any other evidence to substantiate that, such that they might find evidence that would say that they were wrong. I mean, that's kind of an odd position, isn't it? I mean, that once they know that he was stopped in Plattsburgh with a prior felon, that they're not allowed to go and look to see if that really was the case? If they are convinced that there is evidence of criminal activity, so putting aside the issues of the cash, I was addressing your single concern about the supervised release violations alone. It's sort of like you get pulled over at a traffic stop. And then what if there are receipts on his table from Joe's Diner in Plattsburgh at or about the time that, and he's denying that he was in Plattsburgh. Of course, he's denying it, but there's a police report that he was stopped, but they now have a receipt on his desk. That's additional evidence that establishes his presence in Plattsburgh. They're not allowed to go and look for that? I don't think that's what was going on here. All right. Now, there were. There was. I mean, you talk about his trips to New York. Five of them were unauthorized, right? Correct. But the government even acknowledges he could have had permission for those trips because he had gone there before. Right. He could have gotten permission, but it was a violation. It was a violation. But in this case, there's enough there that the government doesn't dispute he had a reason to be going to New York. Thank you. Thank you both for your good arguments. Thank you very much. Thank you. The court will reserve decision.